WILLIAM M. BAILEY, Trustee, *v.* TRUSTEES OF POWER STREET METHODIST EPISCOPAL CHURCH.

A pewholder in a church, whose deed from the society before it was incorporated expressly subjected his pew to all rates and taxes imposed thereon by the trustees for expenses and repairs, cannot object to the repeal, without his assent, of a clause in the charter, subsequently obtained, which required the assent of a majority of the pewholders to the imposition by the trustees of any pew tax, where the general assembly have expressly reserved to themselves the power in the charter to alter, amend, or repeal it at pleasure; nor is notice to the pewholder of the pendency of the petition to the assembly for such repeal, in conformity with ch. 2, sect. 1 of the Revised Statutes, indispensable to the act of repeal.

BILL in equity by the complainant, as the owner of two pews in the Power Street Methodist Episcopal Church in Providence, to restrain the trustees of said church from selling said pews for the non-payment of a tax assessed by them thereon. The bill alleged in substance that Samuel B. Mumford, of whose estate

the complainant is testamentary trustee, purchased two pews — one in 1833 and the other in 1835 — in the Power Street Methodist Church, the deeds of which, from the trustees of said society, not then incorporated, amongst other things, provided, that no right was thereby transferred to the said " Mumford, his heirs, executors, administrators, or assigns to interfere in any way whatever with the concerns and management of the house, or of the government of the church or of the society, or with any church meeting that may be held in said house;" and that if said " Mumford, his heirs, &c., shall neglect to pay to the treasurer of the aforesaid society, the several rates and taxes that shall be levied and assessed by the aforesaid society on said pews, for the purpose of raising money to defray the expenses, and of necessary repairs made, or to be made, on said house, or the lot of land on which said house is built, together with all the moneys that may be due to said society from said Mumford," that said pews should revert to the society and be sold by them for the satisfaction of such rates, taxes, and dues, and the balance, if any, paid over to said Mumford; that in 1841 the general assembly incorporated the trustees of said society by the name of the " Trustees of the Power Street Methodist Episcopal Church," authorizing said trustees, amongst other things, from time to time, as might be required, "*provided a majority of the pewholders assent thereto,* to assess a tax on all the owners of pews in said church, on their original valuation, for the purpose of raising money to defray the expenses for repairs made, or to be made, on said church, or on the lot of land on which said church is built, and for insuring the same," with a power to sell the pews in the event of non-payment thereof — said act of incorporation concluding with the usual clause, that " this act shall be subject to all future acts of the general assembly in amendment, or repeal thereof, or in any way affecting the same ;" that in the winter of 1858–9 an amendment of said charter was procured by the trustees from the general assembly, by which they were empowered " to assess and levy upon the pews in any meeting-house, owned or occupied by said church, in a ratable proportion to the fixed valuation of such pews, and to collect from the owner or owners thereof, all sums of money

that said corporation may vote to be necessary and requisite for the support of public worship, for all repairs and insurance of said meeting-house, and for the improvement of the lot on which it stands," with power of sale, &c., and repealing so much of the former act as is inconsistent therewith; that said act in amendment was procured to be passed without any notice given to the complainant or other pewholders in said church; that under it the trustees have assessed a tax upon the pews of the complainant without first obtaining the consent of a majority of the pewholders, and for non-payment of said tax, have notified him that they shall proceed to sell his pews — from which sale the bill prays the court to enjoin them.

To this bill the defendants filed a general demurrer.

*Hayes*, for the respondents.

1. The amendment of 1858 is not invalid for want of notice to the complainant of the preferring of the petition therefor, because the defendant was not entitled under the statute to notice, or, if entitled, the statute was repealed, as to this petition, by the act of the assembly passing this amendment.

2. The amendment of 1858 does not impair the obligation of any contract, and is not therefore unconstitutional. The assembly, in the charter of 1841, expressly reserved the power to amend or repeal the same; and the complainant held his pews subject to this reserved power, so that the exercise of it by the general assembly cannot impair the obligation of his grants of the pews. *Dartmouth College* v. *Woodward*, 4 Wheat. 712, Story, J.; 2 Kent's Com. 306; Angell & Ames on Corp. § 767; *Wales* v. *Stetson*, 2 Mass. 143.

*Bradley*, for the complainant, contended, that the amendment of the act of incorporation in 1858, dispensing with the assent of the pewholders to a tax upon the pews, was void, because passed without notice to them, and without their consent; and asked the court, at least to suspend all action of the defendants under it, until action could be had in the assembly upon a petition of the complainant and other pewholders, now pending before that body.

AMES, C. J. The original deeds, under which the complainant derived his title to his pews from this church society before

.it was incorporated, expressly subjected them to such rates and taxes as might be imposed thereon by the society for general expenses, and for repairs both of the church and lot; and when the society became incorporated, although the charter required the assent of a majority of the pewholders to the validity of every pew-tax, yet the general assembly reserved to itself, in the amplest terms, by the last section of the charter, the power to alter, amend, or to repeal it at pleasure. As his deed did not, so neither did the charter give to the testator of the complainant or to his assigns any vested right to immunity from taxation, unless the tax was assented to by a majority of the pewholders in the church. This was his right only during the pleasure of the general assembly; and when, at their January session, 1858, the assembly exercised their pleasure, by restoring to the society the untrammelled power to tax the pews according to the tenor of the deeds of the pewholders, they certainly impaired the obligation of no contract contained either in the deeds or the charter, and derogated from no right or interest of the pewholders of a fixed or permanent character. The amendment to the charter complained of, is equally within the control of the assembly, as the original clause which it amended; but we do not see why the pendency of the petition of the pewholders before the assembly, calling upon them to correct their former action as unadvised, should induce us to stay the collection of a tax which has been legally assessed.

In such a case notice, though proper, cannot be necessary to the validity of the act which the assembly had reserved to itself the unconditional power to pass; and granting that the case falls within the scope of ch. 2, sect. 1 of the Revised Statutes requiring notice to be given to parties in interest on all petitions to the general assembly affecting the rights or interests of any person, the special act itself, passed by the assembly without such notice, must be regarded as a legislative dispensation therefrom, or a repeal of the general statute requiring notice, *quoad* this particular case.

The demurrer must therefore be sustained, and the bill of the complainant dismissed with costs.